OPINION OF THE COURT
M. John Sherman, J.
Procedural History
Corelann Nicholson (petitioner) is the mother of a minor child, Richard M. Nicholson (born Dec. 8, 1993; hereinafter *497 Ricky). The mother has been married to Keith Nicholson (Nicholson) for the past 25 years. On January 16, 2001, petitioner filed a support petition, seeking a determination that David Hatch (Hatch) is the father of the child, and also seeking an order of child support against Hatch. On April 10, 2001, petitioner, Hatch, and the child were ordered to undergo HLA blood testing. On May 4, 2001, the results of such test were received, indicating a 99.99% probability that Hatch is the father of the child.
A Law Guardian was appointed for the child, who sought dismissal of the petition on the grounds of equitable estoppel, and the Hearing Examiner referred the matter to this court for a determination on this issue by order dated June 21, 2001. A fact-finding hearing was held on the issue of dismissal on September 20, 2001.
Statement of Facts
Nicholson was listed as the father on Ricky’s birth certificate, and petitioner never stated to him or Ricky her belief that Hatch was in fact Ricky’s father. Nicholson attended school functions with Ricky and otherwise held himself out as Ricky’s father until November 2000. Yet it also appears that Nicholson actually spent little time with Ricky, since he worked at least six days a week, and testified that he never actually played with Ricky, other than occasionally taking him on his four-wheeler.
On the other hand, Ricky enjoyed an extremely close relationship with Hatch from the time of his birth until approximately November 2000. Petitioner and Ricky spent a considerable number of evenings each week with Hatch, as well as most holidays, and even week-long vacations, all without Nicholson. Petitioner maintained a sexual relationship with Hatch during this period of time. Nicholson claims that he never realized the true nature of the relationship between his wife and Hatch, despite their frequent joint trips and overnight visits over this seven-year period. Ricky, although he was forbidden from calling Hatch “Dad,” nevertheless referred to Hatch’s children by another relationship as his “sisters” and Hatch’s parents as his “grandparents,” and attended at least one Hatch family reunion. Hatch gave every indication of a parental concern for Ricky, who reciprocated with a filial devotion to Hatch.
Upon Hatch’s determination to break off his relationship with petitioner in November 2000, he also determined to sever his ties to Ricky. Ricky was and remains devastated emotion *498 ally by this loss of contact with Hatch. Hatch asserts that he recognizes that Ricky is his son, and would be willing to resume some contact if he could avoid involvement in the visitation from petitioner.
Nicholson, upon being told by petitioner that Hatch was the father of the child, and learning the results of the blood test affirming that assertion, has now separated from petitioner and Ricky, and no longer provides financial support to the family. He has indicated his intention to seek employment in Kentucky, and would like to have visitation with Ricky for only a few weeks each summer. When asked if he had considered the effect of this withdrawal from Ricky’s life at a time when Hatch had already cut off his own contact with Ricky, Nicholson admitted that he had failed to consider this.
At the present time, given the revelations made to Ricky by his mother, and the questions he asked at the time he participated in the blood test, Ricky has expressed considerable confusion as to the true identity of his father.
Conclusions of Law
The Law Guardian has cited considerable authority that would tend to establish that the doctrine of equitable estoppel should be applied in this matter, given the seven-year period during which Nicholson has been represented as Ricky’s father. (Matter of Board v Plank, 150 Misc 2d 743 [Fam Ct, NY County 1991]; Matter of Anton W. v Nadine V., 157 Misc 2d 467 [Fam Ct, Bronx County 1993]; Matter of Sharon GG. v Duane HH., 95 AD2d 466 [3d Dept 1983].)
None of those cases, however, involved a biological father who had maintained a close, sustained, and paternal relationship with the child as that demonstrated in this case. It appears that Hatch was certainly more of a real father figure in Ricky’s life than Nicholson, and is certainly no stranger suddenly emerging to disrupt an established father-son relationship after several years.
Furthermore, Nicholson, despite his claim that he still considers himself Ricky’s father, has evinced his desire to abandon Ricky, both financially and emotionally, at a time when Ricky has already been deprived of the other father figure in his life.
Furthermore, Ricky already has some understanding that Hatch may in fact be his “true” father, based upon the statements of petitioner, his participation in the blood tests, and Nicholson’s decision to abandon him following those events. At *499 this point, if visitation can be arranged that does not result in contact between petitioner and Hatch, it appears obvious that Hatch is the most realistic chance that Ricky has at this point of reestablishing and maintaining a father-son relationship.
The doctrine of equitable estoppel is intended to prevent the psychological damage usually inherent in an unexpected revelation of paternity. Application of that doctrine in this case, however, would forever destroy a paternal relationship that should instead be resurrected and stabilized.
Instead of dismissing the paternity petition, this court determines that acknowledgment of the biological truth of Hatch’s relationship to Ricky by a formal finding of paternity would be in Ricky’s best interests.
Accordingly, the Law Guardian’s motion to dismiss the paternity petition is dismissed.